DECISION.
{¶ 1} Kevin York, Daniel Proffitt, and Joseph Richardson appeal the trial court's judgment that dismissed their complaint against the city of Cincinnati, the Fraternal Order of Police, Queen City Lodge #69 ("the FOP"), and the Sentinels Police Association ("the SPA"). Because we conclude that the trial court properly dismissed all the claims under Section 1983, Title 42, U.S. Code, and Proffitt's claim for a writ of mandamus, we affirm those parts of the judgment. But we conclude that York and Richardson presented sufficient evidence to state a claim for mandamus compelling their promotions to two vacancies in the police department, so we reverse that part of the trial court's judgment and remand the case for further proceedings.
 Background {¶ 2} This case centered on promotions made in the Cincinnati Police Division. Before we discuss the promotions in question, it is helpful to understand the law under which promotions are made. Vacancies above the rank of patrol officer are to be filled in order from the promotional-eligible list for those positions.[1] The order of the promotional-eligible list is established by performance on an examination.[2] Once a promotional-eligible list expires, a new examination is held to populate the next list.[3]
 {¶ 3} York, Richardson, and Proffitt, who are police sergeants, were ranked 12th, 13th, and 14th, respectively, on the promotional-eligible list for Lieutenant 04-19 ("list 04-19"), which expired on August 1, 2006, after having been extended multiple times by order of a trial judge presiding over a separate case. *Page 4 
 {¶ 4} In 1987, the SPA and eight individuals filed a lawsuit against the city and the FOP in which they alleged unlawful racial and sexual discrimination. The parties settled the lawsuit, and the trial court approved a consent decree ("the 1987 consent decree") that remains in effect today. The 1987 consent decree ordered that "[a]ll positions to be filled in the ranks above sergeant and below police chief in the Cincinnati Police Division shall be filled by rank order promotion from the applicable eligibility list with [some] exceptions." The consent decree created a double-fill system by which an African-American or a woman would be promoted for every four white males that were promoted from a promotional-eligible list.
 The Promotions {¶ 5} In their complaint, the appellants discussed several promotions that resulted in the vacancies to which they laid claim. At the outset, we note that the slapdash manner in which the city has historically promoted police officers has created a morass that challenges this court each time that we address issues involving promotions. The appellants attempted to untangle the mess in their complaint. According to them, Captain Michael Cureton was promoted to assistant police chief on June 22, 2005. On July 21, 2005, the city promoted Lieutenant Howard Rahtz to the rank of captain to fill the vacancy left by Cureton ("the Cureton vacancy"). The appellants alleged that Lieutenant Michael Neville should have been promoted to fill the Cureton vacancy, because he was the next promotional-eligible lieutenant on the list that was active on July 21, 2005. If Neville had been promoted to the rank of captain, a vacancy would have been created at the rank of lieutenant ("the Neville vacancy").
 {¶ 6} On July 26, 2005, Lieutenant Sandra Sizemore retired, creating a vacancy at the rank of lieutenant ("the Sizemore vacancy"). On November 22, 2005, *Page 5 
as part of a settlement of the case numbered A-0502426, which was pending before another trial judge, Sergeant Timothy Brown was promoted to lieutenant to fill the Sizemore vacancy. Brown was ninth on list 04-19. For reasons not related to this case, Brown was demoted a day later, so that the Sizemore vacancy still existed. Brown was later promoted to fill the vacancy at the rank of lieutenant that was created when Rahtz was promoted.
 {¶ 7} On April 18, 2006, a vacancy at the rank of lieutenant was created by the retirement of Lieutenant Joe Hall ("the Hall vacancy"). And Lieutenant Robert Ruebusch retired effective July 29, 2006, creating another vacancy at the rank of lieutenant ("the Ruebusch vacancy"). According to the complaint, Sergeant John Rees, who was ranked tenth on list 04-19, was promoted on August 9, 2006, to fill the Sizemore vacancy, even though list 04-19 had expired.
 {¶ 8} In addition to the foregoing promotions and subsequent vacancies, the appellants discussed other promotions in their complaint. Two of these promotions are germane to our decision. First, on August 19, 2005, Sergeant Michael Fern was promoted to lieutenant. According to the complaint, Fern was 26th on list 04-19. And on November 22, 2005, in settlement of the case numbered A-0502426, which we have addressed in relation to Brown, the city promoted Sergeants Emmett Gladden and Bret Isaac to lieutenant. Gladden and Isaac, who are African-American, were ranked 11th and 15th, respectively, on list 04-19.
 The Lawsuit {¶ 9} York, Richardson, Proffitt, and Neville filed a complaint in which they alleged that the 1987 consent decree was unlawful and no longer in effect; that if the 1987 consent decree was in effect, the city had unlawfully discriminated against them; that Neville was entitled to promotion to the rank of captain; and that York, *Page 6 
Richardson, and Proffitt were entitled to promotion to the rank of lieutenant. They also sought writs of mandamus compelling the city to promote them. Neville filed an amended complaint on his own behalf, which he later dismissed, and York, Richardson, and Proffitt also filed an amended complaint. The city filed a motion to dismiss. York, Richardson, and Proffitt moved for summary judgment. The trial court granted the city's motion to dismiss.
 Standard of Review} {¶ 10} When reviewing the trial court's dismissal under Civ. R. 12(B)(6), we must accept all the appellants' factual allegations as true and make all reasonable inferences in their favor.[4] To uphold the trial court's dismissal, "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling [him] to recovery."[5]
 The 1987 Consent Decree and the Section 1983 Claims
 {¶ 11} In their first assignment of error, the appellants assert that the trial court erred when it dismissed their claims seeking damages for racial discrimination under Section 1983, Title 42, U.S. Code. Although the first assignment of error is cast as challenging only the trial court's dismissal of their discrimination claims, the appellants address other claims that were alleged in their complaint. We consider those arguments as well.
 {¶ 12} The appellants argued in the trial court that the city had discriminated against them when it promoted Isaac before them; that the city's compliance with the 1987 consent decree was a violation of the Equal Protection Clause; and that the promotions of Rahtz and Fern deprived them of a property interest without due *Page 7 
process. In a seemingly contradictory claim, the appellants also contended that the city did not properly follow the 1987 consent decree when it promoted Isaac, and that, therefore, the 1987 consent decree was unlawful.
 {¶ 13} We first consider the appellants' argument that the 1987 consent decree was unlawful. The appellants alleged that the interim goal of the 1987 consent decree was 25-percent minority and female representation at the ranks of assistant police chief, captain, and lieutenant. According to the appellants, at the time of their complaint, there was a 4o-percent minority and female representation at the rank of assistant police chief and a 30-percent minority and female representation at the rank of lieutenant. The appellants made no allegation about the current representation at the rank of captain. The appellants claimed that, given the minority and female representation in the ranks of assistant police chief and lieutenant, the goal of the consent decree had been met, and use of the double-fill provisions amounted to illegal discrimination. They argued that the consent decree should have been declared unlawful and no longer in effect. As an alternative argument, the appellants asserted that the city's failure to follow the consent decree amounted to a repudiation of it.
 {¶ 14} We conclude that the appellants' arguments are unavailing. First, it is not clear from the complaint that Isaac was promoted under the double-fill provisions of the consent decree. But more importantly, the consent decree was the result of settlement negotiations between the city, the SPA, and the FOP. The FOP, not the appellants as individuals, was a party to the decree. The appellants did not have standing to challenge the consent decree in their individual capacities.[6] *Page 8 {¶ 15} Having concluded that the trial court properly dismissed the appellants' claim to have the 1987 consent decree declared unlawful, we turn to their claims under Section 1983. To establish a Section 1983 claim, the appellants needed to show that "(1) the conduct in controversy [was] committed by a person acting under color of state law, and (2) the conduct * * * deprive[d] the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States."[7] The appellants claimed that the city had deprived them of equal protection, and that they were deprived of property without due process.
 {¶ 16} With respect to their equal-protection claim, the appellants needed to demonstrate that they were "member[s] of a group which has been the subject of some sort of discrimination or classification which is not rational."[8] Here, Isaac was promoted by the city as part of the settlement of case number A-0502426. The settlement was approved by the trial court. We conclude that the appellants, in their collateral challenge to that settlement, could not demonstrate that Isaac's promotion was not rational, so their equal-protection claims were properly dismissed.
 {¶ 17} The appellants also set forth a Section 1983 claim that the city had violated their due-process rights when it promoted Rahtz and Fern. The Ohio Supreme Court has held that "Section 1983 * * * and the substantive due process protections guaranteed by the Fourteenth Amendment do not provide a cognizable remedy to claimants who merely allege they have failed to receive a job promotion."[9] Thus, we must determine whether the appellants presented sufficient evidence of a violation of their procedural due-process rights. *Page 9 
 {¶ 18} The appellants needed to establish that they had a claim of entitlement to promotion, and that they were deprived of this claim without due process. Their claim of entitlement that was based on Rahtz's promotion could not be established. York, Richardson, and Proffitt could not demonstrate that one of them was entitled to promotion to the vacancy that Rahtz had filled. At best, they alleged that Neville was entitled to the promotion, and that Neville's promotion would have created a vacancy at lieutenant to which one of them could claim entitlement. But because Neville did not pursue his claim for the promotion, the appellants' claim with respect to Rahtz failed. With respect to Fern, the appellants did not allege that the city had promoted Fern to a vacancy to which one of them was entitled. In their appellate brief, they argue that Fern was improperly promoted to fill the Sizemore vacancy, but that argument is based on evidence that was not properly before the trial court for purposes of the Civ. R. 12(B)(6) motion.
 {¶ 19} Even if the appellants had been able to demonstrate that they were entitled to be promoted to the vacancies filled by Rahtz and Fern, they could not have demonstrated that they were deprived of their promotions without due process of law. In Shirokey v. Marth, the Ohio Supreme Court held that a firefighter who claimed that he had been improperly denied promotion could not succeed under Section 1983 for an alleged deprivation of due-process rights, because he had statutory and common-law remedies available to him.[10] Similarly, the appellants here had state-law remedies available to them, as demonstrated by their claims for a writ of mandamus to compel the city to promote them. We conclude that the trial court properly dismissed the appellants' claims under Section 1983. *Page 10 
 Mandamus Action {¶ 20} In their second assignment of error, York, Richardson, and Proffitt assert that the trial court erred when it dismissed their request for a writ of mandamus to compel the city to promote them to vacancies at the rank of lieutenant.
 {¶ 21} We first consider the city's argument that the appellants should have brought an action in quo warranto instead of an action seeking a writ of mandamus. An action in quo warranto is used to challenge a person who unlawfully holds an office.[11] The appellants did allege that the city had improperly promoted Fern and Isaac, but they did not seek to have Fern and Isaac removed from their positions. Instead, they asserted that York and Richardson were entitled to promotions to fill the Hall and Ruebusch vacancies, and that Proffitt was entitled to promotion to fill the vacancy that would have existed were Neville successful in his claim for promotion to captain. The appellants properly sought a writ of mandamus.
 {¶ 22} To succeed on their mandamus claims, York, Richardson, and Proffitt had to show "(1) that they ha[d] a clear legal right to the relief prayed for, (2) that the [city was] under a clear legal duty to perform the acts, and (3) that [they] ha[d] no plain and adequate remedy in the ordinary course of the law."[12]
 {¶ 23} According to their complaint, after the promotion of Rees, the appellants were the next three officers in line for promotion from list 04-19. The city argued that the appellants did not establish a clear legal right to relief, because they did not establish that vacancies existed. But for purposes of a Civ. R. 12(B)(6) motion, the appellants needed only to allege that vacancies existed. *Page 11 
 {¶ 24} The appellants alleged that two vacancies existed at the rank of lieutenant due to the retirements of Lieutenants Hall and Ruebusch. A third vacancy, according to the appellants, would have been created if Neville were promoted to the rank of captain to fill the Cureton vacancy. A vacancy would then have been created at the rank of lieutenant. But Neville dismissed his claim and did not seek promotion to fill the Cureton vacancy. Accordingly, with all inferences drawn in favor of the appellants, they could not establish that a third vacancy was created. Based on the allegations in the complaint, York and Richardson sufficiently alleged that they had a clear legal right to promotion to the two vacancies that existed before list 04-19 expired. But Proffitt's claim necessarily failed, because it was derivative of Neville's claim, which he did not pursue.
 {¶ 25} The city also argued that the appellants had not met the third requirement for issuance of a writ of mandamus, because they had an adequate remedy at law. According to the city, the appellants should have appealed to the Cincinnati Civil Service Commission. But the commission's appellate review with respect to promotions is limited to appeals regarding the grading of examinations, not whether vacancies exist.[13] The mandamus claims were properly before the trial court.
 {¶ 26} We conclude that York and Richardson presented sufficient allegations to state a claim for a writ of mandamus compelling the city to promote them to the vacancies left by the retirements. The trial court erred to the extent that it dismissed their claims. The trial court properly dismissed Proffitt's claim seeking mandamus to compel his promotion. The second assignment of error is sustained with respect to York and Richardson and overruled with respect to Proffitt. *Page 12 
 Summary Judgment {¶ 27} In their third assignment of error, the appellants assert that the trial court improperly denied their motion for summary judgment. The trial court did not address the motion for summary judgment. Because the court ruled on the motions to dismiss, the motion for summary judgment was not ripe for decision. The third assignment of error is not well taken.
 {¶ 28} We affirm the trial court's dismissal of all Proffitt's claims and of York and Richardson's Section 1983 claims. We reverse the trial court's dismissal of York and Richardson's claims that sought a writ of mandamus. This cause is remanded for further proceedings in accordance with the law.
Judgment affirmed in part and reversed in part, and cause remanded.
PAINTER, P. J., and DINKELACKER, J., concur.
RALPH WINKLER, retired, from the First Appellate District, sitting by assignment.
[1] See R.C. 124.44.
[2] Id.
[3] Id.
[4] Mitchell v. Lawson Milk Co. (1988), 40 Ohio St.3d 190, 192,532 N.E.2d 753.
[5] O'Brien v. University Community Tenants Union (1975),42 Ohio St.2d 242, 327 N.E.2d 753, syllabus.
[6] See, generally, United Electrical, Radio and Machine Workers ofAmerica v. Delaware City School Dist. Bd. of Edn. (June 11, 2001), 5th Dist. No. 00CAH004010.
[7] 1946 St. Clair Corp. v. Cleveland (1990), 49 Ohio St.3d 33, 34,550 N.E.2d 456, citing Parratt v. Taylor (1981), 451 U.S. 527,101 S.Ct. 1908.
[8] State ex rel. Woltz v. Columbus (Oct. 10, 1991), 10th Dist. No. 91AP-576.
[9] Shirokey v. Marth (1992), 63 Ohio St.3d 113, 585 N.E.2d 407, syllabus.
[10] Id. at ¶ 21.
[11] R.C. 2733.01.
[12] State ex rel. National City Bank v. Bd. of Edn. of the ClevelandCity School Dist. (1977), 52 Ohio St.2d 81, 84, 369 N.E.2d 1200.
[13] Cincinnati Civil Service Commission Rule 17, Sections 1 and 2. *Page 1